# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION

CIVIL ACTION NO: 4:18-CV-00089-JHM

SHELIA OWEN                                                PLAINTIFF

V.

GE AVIATION                                               DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant GE Aviation's Motion for Summary Judgment. [DN 23]. Fully briefed, this matter is ripe for decision. For the following reasons, GE's Motion for Summary Judgment is **GRANTED**.

### I. BACKGROUND

Plaintiff Shelia Owen was employed by GE when they implemented a new attendance policy. [DN 1 at 2–3, DN 22-2 at 8]. The new policy is as follows:

- Excessive Absence Notice (EAN) issued when an employee accumulates five unexcused absences in a calendar year;
- Warning Notice #1 issued when an employee accumulates six unexcused absences in a calendar year and has been issued an EAN;
- Warning Notice #2 issued when an employee accumulates four additional unexcused absences with 365 active days of receiving Warning Notice #1;
- Warning Notice #3 (Disciplinary Time Off) issued when an employee accumulates two additional unexcused absences within 365 active days of receiving Warning Notice #2;
- Warning Notice #4 (Discharge) occurs when an employee accumulates two additional unexcused absences within 365 active days of receiving Warning Notice #3.

[DN 22-2 at 9].

The policy detailed that absences that would not be charged to an employee included paid absences under the Collective Bargaining Agreement (CBA). [*Id.* at 10]. The CBA provides for

paid absences for the death of certain family members such as siblings. [*Id.* at 7]. GE provided Owen with a notice of the new policy and she understood it. [DN 22 Pl. Dep. 55:2–6, 57:24–58:2].

Within in a month of the new attendance policy being in effect, Owen received an EAN. [DN 22-2 at 14]. Owen later received a Warning Notice #1, Warning Notice #2, and Warning Notice #3. [*Id.* at 15–17]. Owen served a five-day suspension March 21–25, 2016 for the Warning Notice #3. [*Id.* at 17]. Owen does not dispute any of the unexcused absences that she received that led to receiving the EAN or the Warning Notices. [DN 22 Pl. Dep. 58:22–61:3].

Owen was absent from work March 28–30, 2016 because of the death of a family member. [DN 22 Pl. Dep. 63:18–64:10]. The funeral was March 23, 2016, while she was suspended from work. [DN 22-2 at 36]. When GE began investigating Owen's three-day bereavement leave, Owen initially claimed that the family member was her adopted brother. [DN 22-2 at 30]. But GE learned and Owen later testified that the family member was actually her cousin. [DN 22 Pl. Dep. 64:21–73:20]. The CBA does not provide bereavement leave for the death of a cousin. [DN 22-2 at 7]. So, GE terminated Owen per the new attendance policy. [*Id.* at 37].

Owen sued GE alleging race and age discrimination. [DN 1]. GE now moves for summary judgment. [DN 23].

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party

2

satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" FED. R. CIV. P. 56©(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

### III. DISCUSSION

Title VII of the Civil Rights Act of 1964 prohibits discrimination in employment on the basis of race. 42 U.S.C. § 2000e–2(a)(1). The Age Discrimination in Employment Act of 1967 (ADEA) prohibits age discrimination in employment. 29 U.S.C. § 623(a)(1). Claims of race and age discrimination are analyzed using the *McDonnell Douglas* burden-shifting framework when there is no direct evidence of discrimination.[1] *E.g.*, *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014); *Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009).

---

[1] Owen argues that the terms "bro" and "Auntie" used to refer to her family members in notes from a meeting between GE and Owen is evidence of direct discrimination, the Court disagrees. [DN 26 at 6]. "'Direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 649 (6th Cir. 2012) (citation omitted); *see Tibbs v. Calvary United Methodist Church* 505 F. App'x 508, 512 (6th Cir. 2012) (explaining that "'[d]irect evidence is composed of only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor.'") (citation omitted). Here, "Bro" appears to be an abbreviation for "brother" and "Auntie" is the term that Owen used herself to describe her aunt. [DN 28-1 at 3, DN 22 Pl. Dep. 16:18–22].

3

Initially, the plaintiff must present evidence sufficient to establish a prima facie case of discrimination. *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802 (1973). Once a plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the defendant articulates such a reason, the burden then shifts back to the plaintiff to establish that the proffered reason is pretext for unlawful discrimination. *Id.* at 804.

**A. Owen's Prima Facie Case**

To establish a prima facie case for discrimination, a plaintiff must show that: (1) she is a member of a protected class; (2) was qualified for the job; (3) she suffered an adverse employment decision; and (4) was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees. *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001) (citation omitted); *Smith v. Wrigley Mfg. Co.*, 749 F. App'x 446, 448 (6th Cir. 2018) (citation omitted).

It is undisputed that Owen is a member of protected classes as an African American who is over the age of forty. [DN 23-1 at 11]. For the purposes of summary judgment, GE does not dispute that Owen was qualified for the position that she held at the time of her termination. [*Id.*]. It is also undisputed that she suffered an adverse employment decision when she was terminated. [*Id.*]. As such, Owen satisfies the first three prongs of the prima facie case for both of her discrimination claims. The issue becomes whether Owen can establish the final prong of the prima facie case for her claims. Owen does not argue that she was replaced by a person outside the protected class, so the Court will focus on whether Owen was treated differently than similarly situated individuals. [DN 1 at 3, DN 26 at 8–9].

In the disciplinary context of employment discrimination, the plaintiff and the comparator must have engaged in acts of "'*comparable seriousness*.'" *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006) (citation omitted). In determining if the acts are of "comparable seriousness," the Court may look to factors "such as whether the individuals 'have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Id.* (citation omitted). But when such factors are not relevant, a court does need not to consider them, rather it can "'make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the [proposed comparable] employee.'" *Id.* (citation omitted).

Here, Owen handwrote a document that contains a list of employees that she says are employees who violated the attendance policy but were not terminated. [DN 22-2 at 39–40, DN 22 Pl. Dep. 98:6–13]. The employees are identified as A, B, C, D, E, and F. [DN 22-2 at 39–40]. Owen offers no evidence that the employees are similarly situated, unprotected individuals. She cannot identify any of these employees by name. [DN 22 Pl. Dep. 99:5–7]. Owen has no personal knowledge about the circumstances of the absences of these employees. [*Id.* at 104:16–105:9]. In fact, Owen does not dispute that the Warning Notices for employees A–F were all removed through the grievance process because they had been issued in an untimely manner. [*Id.* at 104:8–15]. Owen also does not know the race or age of any of these employees. [*Id.* at 127:17–19, 129:1-3].

Furthermore, at her deposition, Owen was not able to name any employee who was treated differently from her under the attendance policy. [*Id.* at 121:13–17]. She also was not able to identify any employees who were a different race or younger than her that she believes were treated differently than her under the attendance policy. [*Id.* at 127:20–25, 129: 4–8]. She admits that she

5

only knows from "word of mouth" that younger or white employees were treated more favorably than her. [*Id.* at 138:14–24]. Conclusory and speculative allegations will not survive a well-supported motion for summary judgment. *See Sperber v. Nicholson*, 342 F. App'x 131, 132 (6th Cir. 2009).

Owen attempts to identify comparators in an affidavit that she filed with her response to GE's motion, but Owen provides no evidence that the comparators are similarly situated individuals who engaged in acts of comparable seriousness. [DN 26-1 at 3–4]. For example, Owen lists the names of white employees that violated the attendance policy that were not terminated. [DN 26-1 at 4]. But Owen provides no specific facts or supporting evidence about the circumstances of these individuals that would make them similarly situated. [*Id.*]. Also, an affidavit must be based on personal knowledge under the Federal Rule of Civil Procedure 56(c)(4); it does not appear that the comparators listed in her affidavit are based on her personal knowledge.

In her response, Owen also identifies Connie Wade as a comparator and says that she has "knowledge that Connie was saved, and later terminated." [DN 26 at 8]. With no citation to the record, Owen only offers a conclusory statement that she has said knowledge. Even if Owen knows of Wade's attendance circumstances, Owen offers no evidence that Wade is similarly situated.

Owen also alleges that GE did not comply with discovery requests. [DN 26 at 9]. Owen's "complaints about alleged discovery violations should not be addressed in an opposition to a motion for summary judgment. If true, the complaints should have been raised in a timely Federal Rule of Civil Procedure 37 motion to compel." *McNealy v. Becnel*, No. 14-2181, 2017 WL 2313143, at *9 (E.D. La. May 26, 2017).

No reasonable jury would determine that Owen has met her prima facie case for proving race or age discrimination.

## B. GE's Legitimate, Nondiscriminatory Reason

Even if Owen could establish a prima facie case of race or age discrimination, GE had a legitimate, nondiscriminatory reason. A poor attendance record can serve as a legitimate, nondiscriminatory reason. *Harris v. Cir. Ct., Clerk's Office, Metro. Nashville,* 21 F. App'x 431, 432–33 (6th Cir. 2001). Owen does not dispute the several unexcused absences that she received under the new policy that led to her termination. [DN 22 Pl. Dep. 58:5–61:8, 63:17–24].

## C. Pretext

Because GE offers a legitimate, nondiscriminatory reason for Owen's termination, the burden then shifts back to Owen to show that the proffered reason is pretext for discrimination. "To carry her burden in opposing summary judgment, [Owen] must produce sufficient evidence from which a jury could reasonably reject [GE's] explanation of why it fired her." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009) (citation omitted). In other words, "did the employer fire the employee for the stated reason or not?" *Id.* at 400 n.4. Owen has failed to show pretext because she has not provided evidence that shows GE's reason for terminating her (1) had no basis in fact; (2) did not actually motivate the termination; or (3) was insufficient to motivate the termination. *See id.* at 400.

Here, Owen does not contest that she received the unexcused absences that led to her termination, and, therefore, cannot show that GE's reason for terminating her had no basis in fact. [DN 22 Pl. Dep. 58:5–61:2] Owen further argues that her termination was not warranted because it was pretext for discrimination but offers no evidence of an illegal motivation that was more likely than GE's offered reasoning for her termination. [DN 26 at 9–10]. No reasonable jury could

7

find that GE's attendance rationale did not actually motivate GE's decision. Finally, Owen cannot show that GE's reason for her termination was insufficient to motivate her termination because as discussed before Owen provides no sufficient evidence that similarly situated, unprotected employees were not disciplined. GE is entitled to judgment as a matter of law on Owen's race and age discrimination claims.

## IV. Conclusion

For the reasons set forth above, **IT IS HEREBY ORDERED** that GE's Motion for Summary Judgment [DN 23] is **GRANTED**.

*Joseph H. McKinley*

Joseph H. McKinley Jr., Senior Judge
United States District Court

January 14, 2020

cc: counsel of record